[he] would ensure that [you] would not be hired by a competing ice manufacturer," EXCEPTING any evidence received by you solely in the course of and subject to the protective order in the McNulty Litigation.

6. **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 34 of the amended complaint in the McNulty Litigation that you received instructions from Keith Corbin, in January of 2005, "as to the geographic locations of the Speedway stores Arctic Glacier could service and the locations that Arctic Glacier could not service because of its market allocation agreement with Home City," EXCEPTING any evidence received by you solely in the course of and subject to the protective order in the McNulty Litigation.

7. **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 35 of the amended complaint in the McNulty Litigation that you "questioned Mr. Corbin about the details of the market allocation agreement between Arctic Glacier and Home City" and that "Mr. Corbin explained that Arctic Glacier had agreed with both Home City and Reddy Ice to geographically divide the market for the sale and delivery of packaged ice," EXCEPTING any evidence received by you solely in the course of and subject to the protective order in the McNulty Litigation.

8. **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 35 of the amended complaint in the McNulty Litigation that Keith Corbin told you "that he had recently flown to Cincinnati to meet with Home City executives to discuss a dispute regarding which competitor would control customer stores located in a specific geography," EXCEPTING

any evidence received by you solely in the course of and subject to the protective order in the McNulty Litigation.

9.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 36 of the amended complaint in the McNulty Litigation that that Keith Corbin told you that Arctic Glacier's conspiracy with Reddy Ice extended throughout the United States, including but not limited to documents supporting the allegation that Keith Corbin told you that "Arctic Glacier had 'backed away' from buying an ice company in Nevada so that Arctic Glacier and Reddy Ice would not be in direct competition," EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

10.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 36 of the amended complaint in the McNulty Litigation that that Keith Corbin told you "that Arctic Glacier's agreement not to enter the South and Southwest (a geography dominated by Reddy Ice) enabled Reddy Ice to 'get their prices up,' and Reddy Ice's agreement to stay out of the Midwest and Canada enabled Arctic Glacier to do the same," EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

11.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 37 of the amended complaint in the McNulty Litigation that that Keith Corbin told you, as to your Speedway account, that he "did not want to disrupt Arctic Glacier's commitments to its competitors by allowing [you] to compete aggressively for Speedway's business in a broad

geographic area," EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

12.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 37 of the amended complaint in the McNulty Litigation that that you "told Mr. Corbin that [you] believed any agreement between Arctic Glacier and a competitor to allocate geographies and customers was unlawful and that [you] could not participate in any such agreement," EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

13.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 39 of the amended complaint in the McNulty Litigation that that on January 27, 2005, Arctic Glacier sent a letter to you from Canada confirming the termination of your employment, "using the false justification that '[t]his decision was made as a result of the restructuring of the Corporate Marketing department,'" EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

14.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 39 of the amended complaint in the McNulty Litigation that that prior to January 27, 2005, "Arctic Glacier had agreed with its co-conspirators in its market allocation scheme that [your] employment with Arctic Glacier should be terminated," EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

15.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 40 of the amended complaint in the McNulty Litigation that that you "told a former colleague from Party Time named Geoff Lewandowski (who had also been terminated by Arctic Glacier) about" that you had "decided to disclose the [market allocation] scheme to government authorities in order to prevent [Arctic Glacier and others] from continuing to defraud customers," EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

16.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 41 of the amended complaint in the McNulty Litigation that that on March 28, 2005, you "received a phone call from a colleague of Mr. Knowlton named Fiaz Simon, who was calling at the behest of Mr. Knowlton," seeking to "set up a meeting between himself, [you] and Mr. Knowlton to address terms upon which Arctic Glacier might rehire [you . . . at] an annual salary of more than twice [your] previous salary" conditioned upon your "participation in the [market allocation] conspiracy and your not cooperating with the government," EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

17.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 45 of the amended complaint in the McNulty Litigation that that you "sent a letter to Joseph Riley, the president of the Tropic Ice Company" and that "[i]n response to the letter, Mr. Riley called and agreed to meet with [you] to discuss [your] application for employment,"

EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

18.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 45 of the amended complaint in the McNulty Litigation that you were told that the United States Department of Justice and Federal Bureau of Investigation "suspected that Tropic Ice was conspiring with Arctic Glacier and Home City," that those agencies asked you to tape record the meeting between yourself and Joseph Riley, and that you agreed to do so, EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

19.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 46 of the amended complaint in the McNulty Litigation that you "met with Mr. Riley on January 27, 2006 at a restaurant in Lansing, Michigan," and that"[d]uring the course of this meeting, Mr. Riley told [you] that Arctic Glacier and its co-conspirators in the market allocation scheme had all agreed not to hire [you] and that [you] were being 'blackballed' from the industry," EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

20.  **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 48 of the amended complaint in the McNulty Litigation that "[a]fter not hearing from Mr. Riley for roughly six weeks, and following a request from the government, [you] called Mr. Riley," that the conversation was recorded, and that "Mr. Riley confirmed . . . that Tropic Ice had agreed

with Arctic Glacier that Tropic Ice would not hire [you]," including but not limited to actual recordings and transcripts but EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.

21. **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 52 of the amended complaint in the McNulty Litigation that if you had "worked for Arctic Glacier – or any other packaged ice competitor – beyond January 27, 2005, [you] would have disrupted the Defendants" unlawful market allocation scheme by competitively and aggressively seeking the business of corporate accounts, including the business of accounts that were outside the scope of Arctic Glacier's allocated territory," EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation

22. **PRODUCE** complete and legible copies of all documents in your possession or control that refer to, evidence or support your allegation in ¶ 52 of the amended complaint in the McNulty Litigation that "opportunities would have existed to expand the geographic coverage of Sam's Club, Wal-Mart, CVS, Kroger, Speedway and other accounts [and] also would have existed to service new accounts outside of Arctic Glacier's territory," EXCEPTING any evidence received by you solely in the course of and subject to a protective order in the McNulty Litigation.



**TAB 6 FOLLOWS**

# United States District Court
# Eastern District of Michigan



*Subpoena in a Civil Case and Return of Service Form*

| Plaintiff(s) | | Defendant(s) |
|---|---|---|
| IN THE MATTER OF PETITION OF ALEXANDER DOBBIE | v | |

TO:

Martin G. McNulty
30623 Dawson St
Garden City, MI 48135-1989

CASE NO. 2010

JUDGE

☐ SUBPOENA FOR ATTENDANCE AT TRIAL
☒ SUBPOENA FOR ATTENDANCE AT A DEPOSITION
☐ DOCUMENT PRODUCTION REQUEST ONLY
☐ PROPERTY INSPECTION REQUEST ONLY

| **COMMAND TO APPEAR** | YOU ARE HEREBY COMMANDED to appear at the place, date and time specified below to give testimony in the above case, and, if so indicated, to bring certain documents with you. |
|---|---|

Place:
   Stephen M. Landau PC
   30100 Telegraph Rd., Ste 428
   Bingham Farms MI 48025-4564

Date:   Tuesday, April 13, 2010
Time:   10:00 a.m.

☐ APPEARANCE WITH DOCUMENTS (SEE DESCRIPTION BELOW)
☒ APPEARANCE WITHOUT DOCUMENTS

| **COMMAND FOR DOCUMENTS** | YOU ARE HEREBY COMMANDED to have the following documents, objects or things delivered to the place listed below, or allow the inspection of the below-listed property at the date and time specified. |
|---|---|

Place:

Date:

Time:

Description of documents/items to be produced or property to be inspected:

This subpoena is issued by (name, address and telephone number of attorney:)
Stephen M. Landau (P16383)
30100 Telegraph Road, Suite 428
Bingham Farms, MI 48025-4564
248.358.0870

Date of execution

On behalf of the
☒ Plaintiff   ☐ Defendant

Signature of issuing attorney/court officer

INT-0129-MIE-4/92 REV. 4194

PAGE ONE OF TWO

Federal Rules of Civil Procedure
Rule 46

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 1 00 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## RETURN OF SERVICE

Served on:                                    Place:

| Date of Service | Amount of fees tendered | Printed name of server |
|---|---|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in this Return of Service is true and correct.

| Signature of Server | Address of Server |
|---|---|
| Date of execution | |

PAGE TWO OF TWO



**TAB 7 FOLLOWS**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN G. McNULTY,

                Plaintiff,

v.

REDDY ICE HOLDINGS, INC.,
ET AL.,

                Defendants.
_____/

Case No. 08-13178

Honorable Paul D. Borman
United States District Judge

Honorable R. Steven Whalen
United States Magistrate Judge

## OPINION AND ORDER REGARDING CROSS-MOTIONS FOR PROTECTIVE ORDER

Before the Court are Defendants' Motion for Protective Order [Doc. #113] and Plaintiff's Cross-Motion for Protective Order [Doc. #115]. For the reasons set forth below, Defendants' Motion [Doc. #113] will be GRANTED, and Plaintiff's Motion [Doc. #115] DENIED.

### I.  BACKGROUND

Discovery in this case will almost certainly include sensitive and confidential commercial information. The parties agree that a protective order is necessary, and have to a large extent agreed to the terms of such order. However, certain disputes remain, most particularly as to the scope of permissible disclosure of protected material. At issue are the following items:

(1) Defendants seek to limit disclosure only to the court "to whom this matter, Civil Action No. 2:08-cv-13178 (E.D. Mich.), is assigned." Plaintiff has narrowed his original request, but still proposes disclosure to other courts with "cases involving allegations of

anticompetitive activity by any of the Defendants that are: (i) currently pending in the Eastern District of Michigan (where a related MDL is pending); and (ii) in the Southern District of Ohio (where Home City Ice, Arctic Glacier, Keith Corbin, Gary Cooley, and Frank Larson have agreed to plead guilty to a criminal market allocation conspiracy in the packaged ice industry)." Plaintiff also offers to provide 10 days written notice prior to any disclosure. *Joint List of Unresolved Issues*, Doc. #127.

(2) Plaintiff's proposed protective order would permit disclosure to civil government authorities in the case of "currently pending civil governmental investigations or cases." *Id*. Defendants oppose this provision.

(3) Plaintiff seeks a protective order that would permit disclosure in the related multi-district litigation case, specifically to "[c]ounsel in MDL 1952, provided that the proposed recipient is already operating under a protective order entered in MDL 1952 or agrees to be bound by this Order and signs Exhibit A to this order." Defendants oppose this provision as premature, because a protective order has not been entered in the MDL case. *Id*.

(4) Finally, the parties quibble over the language of a provision governing the inadvertent disclosure of privileged information. *Id*.

## II.   LEGAL PRINCIPLES

Fed.R.Civ.P. 26(c) provides for entry of a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Rule 26(c)(7) provides "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way...." The district courts have "broad discretion...to decide when a protective order is appropriate and what degree of protection is required," and "the general public right of access does not

reach pretrial discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36-37, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

Under Rule 26(c), the granting of a protective order requires a showing of good cause. The burden of establishing good cause for such an order rests with the movant, but the court's discretion is "limited by the careful dictates of Fed.R.Civ.P.26." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir.1996); *see also General Dynamics Corp. v. Seib Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied*, 414 U.S. 1162 (1974).

### III.   DISCUSSION

### A.   Disclosure to Other Courts

It is well within a court's discretion to limit disclosure of confidential material to the pending case, and to preclude disclosure to non-parties or to litigants in other cases. *See Scott v. Monsanto Co.*, 868 F.2d 786, 792 (5th Cir. 1989); *Vollert v. Summa Corp.*, 389 F.Supp. 1348, 1351 (D.C. Hawaii 1975) (court issues protective order "limiting plaintiff's uses of the discovered information and prohibiting disclosure of the information beyond the confines of this case.").

In this case, both parties have shown good cause for the issuance of a protective order with regard to confidential business and commercial information. Again, however, the scope of such order is entrusted to the Court's discretion. Plaintiff's case is, of course, related to pending MDL cases in the Eastern District of Michigan and the Southern District of Ohio, but is also narrower in scope, insofar as the Plaintiff's RICO claim is limited by his February 17, 2005 waiver. *See Opinion and Order re: Plaintiff's Motion to Compel Discovery*, filed contemporaneously with this Opinion and Order. Indeed, the

Plaintiff's surviving issues center on the alleged post-termination conspiracy to blackball him from employment in the packaged ice industry. He will have access to Defendants' confidential information for use in this case, and he will suffer no prejudice if he is precluded from disseminating that information to counsel in other cases. *Scott v. Monsanto Co., supra.* Moreover, nothing in this protective order precludes independent discovery in other cases. Finally, the protective order will provide that if the party requesting discovery seeks to disclose information outside the context of this case, that party may bring an appropriate motion.

Therefore, Defendants' request to limit disclosure of confidential material to this Plaintiff's case is GRANTED, and Plaintiff's request for more expansive disclosure is DENIED.

**B.    Disclosure to Governmental Authorities**

Plaintiff seeks an order that would permit the disclosure of confidential materials to state and federal governmental authorities in the case of "currently pending civil governmental investigations or cases." Plaintiff proposes that this provision would be subject to 10 day advance notice prior to disclosure, "and would prohibit disclosure unless the governmental entity agreed to take appropriate steps to preserve the confidentiality of such material." *Joint List*, p.5. Plaintiff argues that "public policy favors disclosure of wrongdoing to government authorities." *Id.*

Plaintiff has already disclosed wrongdoing to the government, and as a result, guilty pleas have been entered in the Southern District of Ohio. Public policy does not weigh in favor of parties to a private lawsuit serving as discovery agents for the government. Both the federal government and the various state attorneys general who are investigating the Defendants are well aware of the background of this case and the allegations of

"wrongdoing." They have subpoena power sufficient to obtain whatever documents and other information they need for their investigations. Restricting disclosure to the present case will neither stymie law enforcement nor prejudice the Plaintiff's prosecution of this case. On the other hand, an order presumptively allowing disclosure would be pregnant with mischief.

As with disclosure to other courts, I find that confidential material should be confined to use only in the present case, and should not be provided to governmental agencies over which this Court has little control. If, however, Plaintiff believes that he has cause to deviate from the protective order and provide specific information to entities outside the context of this lawsuit, he may file an appropriate motion.[1]

### C.    Disclosure to Counsel in MDL Case

The issues in Plaintiff's case are significantly narrower than those in the related MDL cases. The courts in the MDL action have not yet entered a protective order, and this Court has no way of divining what the terms of that future order might be. While information sharing might at some point be appropriate, I agree with Defendants that at present, the request to share information with MDL counsel is premature.[2] In this regard, Defendants' motion is GRANTED, and Plaintiff's motion is DENIED.

---

[1] Both Plaintiff's and Defendants' proposed protective orders provide a mechanism for pre-disclosure judicial review. The difference lies in who has the burden of persuasion. The Defendants have met their burden of showing the need for a protective order that limits disclosure to the confines of the present case. The burden of showing the need to deviate from that order properly rests with the party seeking more expansive disclosure.

[2] As if to underscore the potential for mischief inherent in Plaintiff's proposed protective order, the Court was advised that counsel in a related Canadian case also seeks access to discovery material generated in this case. (Canadian counsel was present in the courtroom during argument on this motion). This Court has no interest in either ceding control of discovery to other courts, or in limiting what those courts might choose to include in their own protective orders.

## IV.   Inadvertent Production of Privileged Information

With regard to the inadvertent production of privileged information, both parties agree to the applicability of Fed.R.Civ.P. 26(b)(5)(B), which provides:

> **"(B)** *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved."

The Plaintiff objects to Defendants' proposed language that requires the return any document that "appears to be an inadvertently produced privileged document." Plaintiff argues that "appears to be" is ambiguous, and would subject him to an uncertain burden of identifying a potentially large number of documents.

Both parties have cited with approval American Bar Association Model Rule 4.4(b), which states:

> "A lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender."

The "knows or reasonably should know" language of the Model Rule provides a more objective standard, and is thus preferable to the more vague "appears to be" phrase. Therefore, the protective order shall contain the language of ABA Model Rule 4.4(b).

## IV.   CONCLUSION

Plaintiff's Cross-Motion for Protective Order [Doc. #115] is DENIED.

Defendants' Motion for Protective Order [Doc. #113] is GRANTED, under the terms set

forth above.  Within five business days of the date of this Order, Defendants shall efile a

proposed Protective Order consistent with this Order.  Upon review, the Court will sign

and enter the Protective Order.

IT IS SO ORDERED.


s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE


Dated:  January 25, 2010


## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys
and/or parties of record by electronic means or U.S. Mail on January 25, 2010.


s/Susan Jefferson
Case Manager

**TAB 8 FOLLOWS**



**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**IN RE APPLICATION OF ALEXANDER
DOBBIE FOR DISCOVERY ASSISTANCE
IN AID OF FOREIGN TRIBUNAL
PURSUANT TO 28 U.S.C. § 1782(a)**

**Misc. Action
No. 2010-_____
Hon**

**EX PARTE ORDER
GRANTING PETITION
FOR ASSISTANCE IN AID
TO FOREIGN TRIBUNAL**

This matter is before the Court on the Application of Alexander Dobbie, supported by the Declaration of Daniel Bach and a Brief in Support from which this Court has determined that the requisite provisional showing has been made to permit discovery in this Court in aid of a foreign tribunal.  Accordingly,

**IT IS ORDERED** that the petition of Alexander Dobbie is granted.

**IT IS FURTHER ORDERED** that a copy of this order together with copies of the Petition, Declaration, Brief in Support, Request for Production of Documents, Subpoena and Notice of Taking Deposition may be personally served upon Martin G. McNulty and served upon Daniel L. Low, Daniel A. Kotchen and Andrew A. Patterson, his counsel, by email.

**IT IS FURTHER ORDERED** in the absence of the filing of a motion for protective order within 14 days of service upon Martin G. McNulty that the requested discovery proceed in compliance with the Federal Rules of Civil Procedure.

_____
U.S. District Court Judge